UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

MURTY ROMPALLI,                              :

                Plaintiff,           :     **REPORT AND**
                                                         **RECOMMENDATION**
    - against -                                 :     **TO THE HONORABLE**
                                                         **RICHARD M. BERMAN**

ALEKSANDRA PORTNOVA, et al.,       :

                                                      09 Civ. 3083 (RMB) (FM)
               Defendants.          :

------------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 05/5/2010

**FRANK MAAS**, United States Magistrate Judge.

      Pro se plaintiff Murty Rompalli ("Rompalli") brings this action against his former employer, Tykhe Capital LLC ("Tykhe"), and several Tykhe officers and employees (together, the "Individual Defendants," and with Tykhe, the "Defendants"). Rompalli contends that the Defendants violated several federal statutes, including the Occupational Safety and Health Act ("OSHA"), the Fair Labor Standards Act ("FLSA"), and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), in connection with his employment at Tykhe and subsequent termination. Rompalli also brings state law claims against the Defendants for defamation, libel, slander, and negligent infliction of emotional distress.

      The Defendants have moved to compel arbitration of all of Rompalli's claims, based on an employment agreement ("Agreement") that he signed on August 10, 2006, prior to commencing work at Tykhe. Alternatively, they move to dismiss all of

Rompalli's claims against the Individual Defendants and most of his claims against Tykhe pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Docket No. 23). The Defendants also seek to enjoin Rompalli from filing any related proceedings against any of them before any federal court or agency.

For the reasons set forth below, I recommend that Rompalli be compelled to arbitrate his claims against Tykhe, and that all the remaining claims in this suit be stayed pending the outcome of the arbitration.

I.  Background

Unless otherwise noted, the factual recitation that follows is based on the allegations of Rompalli's Amended Complaint, (Docket No. 21), which are presumed to be true for present purposes.

Rompalli is a non-white man of Indian origin who was employed by Tykhe as a computer operator from August 2006 to March 2008. (Am. Compl. ¶ 1).

Tykhe is no longer in business, but previously was an investment advisory firm managing hedge funds and other investment vehicles. (Moscow Affirm. ¶ 3) (Docket No. 25).

During the time Rompalli was employed by Tykhe, the Defendants

> discriminated [against him] by creating a hostile work environment, excess work load, assigning multiple supervisors, blaming [him] for their infrastructure flaws, giving [him] less superior and crash quality computer to operate, forcing [him] to work extra long hours for free, . . . less or no holidays, less than ideal travel benefit, multiple

>responsibilities (operations, accounting, programming, food delivery, stacking paper junk), no paid breakfast and meals, less or no sick days, no company parties (that [he] can freely participate in), oppression of speech and intimidation.

(Id. ¶ 3).  Indeed, Tykhe required Rompalli to work from 4 a.m. to 5:30 p.m. each day without a lunch break.  (Id.).  He also was not allowed to leave until he finished his work.  (Id. ¶ 4).  Although Rompalli's official job title was "Execution Trader," his actual job functions included "computer operator, accountant, coder, food delivery boy and . . . scapegoat on the desk."  (Id. ¶ 34).  He never was paid any overtime despite regularly working more than forty hours per week.  (Id.).  Because he was not white or "honorary white," Tykhe management did not share information with him about federal or state wage and hour laws, or his right to organize and form a union.  (Id. ¶ 36).

Rompalli suffered both physical and emotional abuse as a Tykhe employee.  Among other things, defendants Zhihong Huang ("Huang") and Aleksandra Portnova ("Portnova") regularly berated him for failing to finish his work.  (Id. ¶¶ 15, 16, 28).  Portnova also once attempted to choke him.  (Id. ¶ 16).  Rompalli believes that the Defendants "would not have treated [him] the way they each treated [him] if only [he] were white, honorary white, or from a national origin of their preference."[1]  (Id. ¶ 27).

During the course of Rompalli's employment, Portnova made sexual advances toward him in the office in front of other staff members and showed him

---

[1] Rompalli characterizes his treatment as discrimination, but acknowledges that when he complained about his long hours, his supervisors told him that "everyone works hard during first 2-3 years."  (Am. Compl. ¶ 4).

pornography on her computer. (Id. ¶ 12). When Rompalli failed to respond to her "mating advances," Portnova became increasingly violent. (Id. ¶ 16). At one point, Portnova forced Rompalli to work longer hours in retaliation for his failure to return her sexual advances.[2] Portnova also retaliated by giving Rompalli a negative performance review. (Id. ¶ 7). In February 2008, Rompalli "pretended" to reciprocate Portnova's sexual advances by "agreeing to go out with her, have lunch with her[, and] talk flattery." (Id.). When he subsequently refused to go out on a date, however, she became angry and assigned him additional work. (Id.). During the course of this additional work, Rompalli had to access certain folders on the Tykhe computer network, which led to his discovery of child pornography on Portnova's public folder. (Id. ¶¶ 8-9).

When Rompalli reported Portnova's harassment, the child pornography on her computer, and the discrimination he had suffered, Human Resources failed to document his complaint. (Id. ¶ 5). Indeed, Tykhe management delivered the ultimatum that he either must work with Portnova or "get lost." (Id. ¶ 12). Additionally, after Rompalli reported Portnova's behavior to management, she started a "slander campaign," accusing him of sexual harassment. (Id. ¶ 7).

Defendant Ross Garon ("Garon") is the CEO of Tykhe. Garon initially suspended Rompalli in retaliation for his reports of discrimination and harassment. Subsequently, Garon "terminated all [of Rompalli's] access and benefits" and "[told

---

[2] Rompalli received treatment in the emergency room for the exhaustion and back pain caused by this incident. (Am. Compl. ¶ 6).

Rompalli] belatedly that [he had] been terminated." (Id. ¶¶ 11). Despite his termination, Rompalli did not receive any severance pay or COBRA health coverage. (Id. ¶ 30). Tykhe also maintained falsely that Rompalli left voluntarily, thus making him ineligible for severance pay or unemployment benefits. (Id. ¶ 13).

Following Rompalli's termination, Tykhe continued its retaliation by falsely accusing him of sexually harassing Portnova and planting pornography on her computer. (Id. ¶ 11). Garon and defendant Ravishankar Subramanya, an owner of Tykhe, further conspired with Huang and Portnova to prevent Rompalli from working in finance again. (Id. ¶¶ 13, 32). Garon, Subramanya, and Tykhe also engaged in a pattern of mail fraud and bank fraud by mailing fraudulent health insurance papers and COBRA forms to Rompalli and interfering with his personal bank accounts and investing records related to his retirement account. (Id. ¶ 46). These same defendants also engaged in a pattern of contract fraud in their hiring and firing of employees, using fraudulent time cards, progress reports, and performance reviews to steal labor from Rompalli and at least two other former Tykhe employees. (Id. ¶ 47). Rompalli further suggests that Tykhe's "strong rooted beliefs in the superiority of white skin and white national origins" made it an "illegal business" that has defrauded the United States in order to gain immigration benefits for its preferred employees. (Id. ¶ 14).

In his papers opposing the motion to compel arbitration, Rompalli alleges that his Agreement with Tykhe is unconscionable and was fraudulently induced. (Rompalli Affirm. (Docket No. 27) at 7).  As Rompalli explains:

> The employment contract with Tykhe Capital is unconscionable because [he] had unequal bargaining power, no full knowledge of waving [his] constitutional rights, was not given any grace period or opportunity to understand it and had no choice to opt out of [the] arbitration clause. Tykhe, instead of mailing, faxing or emailing the contract to [him] or to [his] recruitment agent (who is more knowledgeable in employment matters), made [him] sign this contract in the interview room, right after [the] final round interview. . . . There is no mutuality or any sign of negotiating any part of the agreement.  [His] signature on the contract was a result of pressure and fraudulent misrepresentation (about [Tykhe's] relationship with its UK parent company) and fraudulent inducement (that [he would] become an investor in the hedge fund; that [he would receive] dental insurance which in fact was a discount plan and not an insurance plan; that it has sound people and infrastructure in technology). [He] was also unaware of the fraudulent arbitration scheme in the contract at that time because it was disguised as a clause of routine formality.

(Id.).

Insofar as relevant, the Agreement signed by Rompalli provides that

> any dispute relating to or arising out of Employee's employment at the Company, which cannot be resolved by negotiation, shall be settled by binding arbitration by JAMS/Endispute.  Employment disputes include, but are not limited to, all claims, demands or actions under Title VII of the Civil Rights Act of 1964, Civil Rights Act o[f] 1966, Civil Rights Act of 1991 and all amendments to the aforementioned, and any other federal, state, or local statute or regulation or common law regarding employment

>discrimination in employment or the termination of employment.

(Agreement § 16).

Since his termination, Rompalli has filed at least eight separate complaints arising out of his employment at Tykhe, including a complaint to the FBI, three complaints to the United States Department of Labor, two complaints to the United States Department of Justice, a complaint to the United States Securities and Exchange Commission, and this suit.  (Defs.' Mem. (Docket No. 24) at 21-22; Moscow Affirm. ¶ 6).

II.     Applicable Law

   A.     Motion to Compel Arbitration

The Defendants argue that Rompalli agreed to arbitrate any claims arising out of his employment, including all of the claims advanced in this action, when he signed the Agreement at the outset of his employment at Tykhe.  (Defs.' Mem. at 2).

Through its passage of the Federal Arbitration Act ("FAA"), Congress established a federal policy favoring arbitration.  Shearson/Am. Exp., Inc. v. McMahon, 482 U.S. 220, 225-26 (1987); Scherk v. Alberto-Culver Co., 417 U.S. 506, 510-11 (1974).  Federal courts therefore must enforce privately-negotiated arbitration agreements "with the same vigor" that they enforce other contracts.  Cronas v. Willis Group Holdings Ltd., No. 06 Civ. 15295 (GEL), 2007 WL 2739769, at *9 (S.D.N.Y. Sept. 7, 2007) (citing Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 219 (1985)).  In addition, even when

the party opposing arbitration raises a claim based on a federal statutory right, federal courts must compel arbitration as long as there is a valid arbitration agreement among the parties. Id. (citing Shearson/Am. Exp., 482 U.S. at 226; Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626-27 (1985)).

In the Second Circuit, to decide whether a party can be compelled to arbitrate, a district court must apply a four-prong test:

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then determine whether to stay the balance of the proceedings pending arbitration.

Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 844 (2d Cir. 1987) (internal citations omitted); Sinnett v. Friendly Ice Cream Corp., 319 F. Supp. 2d 439, 443 (S.D.N.Y. 2004). In this case, Tykhe has satisfied all four prongs.

1. Agreement to Arbitrate

At the outset, Rompalli does not dispute signing the Agreement, but, rather, contends that the contract is unconscionable and was fraudulently induced. (Rompalli Affirm. at 7). When a plaintiff challenges the validity of the entire contract and not merely the arbitration clause, the plaintiff's contractual claim must be decided by the arbitrator. Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 445-46 (2006); Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04 (1967); Ace

Capital Re Overseas Ltd. v. Cent. United Life Ins. Co., 307 F.3d 24, 29-30 (2d Cir. 2002). Accordingly, this Court cannot ignore the arbitration provision and consider Rompalli's contention that the entire contract should not be enforced.

Turning to his claim of unconscionability, even if Rompalli were able to show that the Agreement was unconscionable, this would not allow him to avoid arbitration. "Perry v. Thomas, 482 U.S. 483 (1987), dictates that we apply state law in determining whether the parties have agreed to arbitrate." Progressive Casualty Ins. Co. v. C.A. Reaseguradora Nacional de Venezuela, 991 F.2d 42, 45-46 (2d Cir. 1993). Under New York law, an unconscionable agreement is voidable, not void, because the party disadvantaged by an unconscionable agreement may validate or ratify it. King v. Fox, 7 N.Y.3d 181, 191 (2006). New York law further provides that a challenge to the validity of a contract containing an arbitration clause must be arbitrated, not decided by the Court, when the contract is merely voidable. Denney v. BDO Seidman, L.L.P., 412 F.3d 58, 67-68 (2d Cir. 2005). Accordingly, Rompalli's unconscionability claim must be raised before the arbitrator, not the Court.

On the other hand, the Court potentially can consider Rompalli's assertion that he was "unaware of the fraudulent arbitration scheme because it was disguised as a clause of routine formality," (see Rompalli Affirm. at 7), a claim specific to the arbitration provision. See, e.g., Prima Paint Corp., 388 U.S. at 403-04. Here, at the time that he signed the Agreement, Rompalli certified that he had read the Agreement

carefully, had been afforded an adequate opportunity to consult with any advisors he deemed necessary, and understood the Agreement's contents. (Agreement at 9). Moreover, the Agreement plainly disclosed that Section 16 related to "Dispute Resolution" and that it provided for "binding arbitration" of employment disputes "by JAMS/Endispute." (Id. § 16). There consequently was nothing "disguised" about the Agreement's arbitration language. See Cronas, 2007 WL 2739769, at *10 ("Under New York law, one 'who signs or accepts a written contract, in the absence of fraud or other wrongful act on the part of another contracting party, is conclusively presumed to know its contents and to assent to them.'") (quoting Metzger v. Aetna Ins. Co., 227 N.Y. 411, 411 (1920)).

Additionally, Rompalli fails to plead facts sufficient to support his assertion that Tykhe fraudulently induced him to agree to the arbitration clause. Even if the Agreement somehow disguised the import of its arbitration language, the shortcoming would have been part of the Agreement rather than collateral to it. Under New York law, Rompalli consequently would not be entitled to set aside the Agreement (or the arbitration clause) on fraudulent inducement grounds. See Doctor's Assocs., Inc. v. Distajo, 107 F.3d 126, 134 (2d Cir. 1997) ("We apply state law . . . to the issue whether [a party] fraudulently induced the arbitration agreement."); Int'l Plaza Assocs., L.P. v. Lacher, 63 A.D.3d 527, 527 (1st Dep't 2009) (dismissing fraudulent inducement counterclaim for failure to allege "fraud extraneous and collateral to the contract").

In sum, Rompalli cannot dodge arbitration of his claims on the theory that either the entire Agreement or the arbitration clause is unenforceable.

2.      Scope of the Arbitration Clause

In his Amended Complaint, Rompalli expressly relies on Title VII and the Civil Rights Act of 1866 as statutory bases for his claims.  (See Am. Compl. at 2, 16).  "It is by now clear that statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA."  Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991).  As the Supreme Court has recognized, "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum."  Id. (quoting Mitsubishi, 473 U.S. at 628).  In Section 16 of the Agreement, Rompalli expressly agreed to arbitrate claims "under Title VII of the Civil Rights Act of 1964, [and the] Civil Rights Act of 1866."  Accordingly, these claims cannot be heard by this Court.

An arbitration agreement also applies to non-enumerated employment discrimination claims when an employee is placed on notice that all of his discrimination claims must be arbitrated.  See, e.g., Cap Gemini Ernst & Young U.S. LLC v. Arentowicz, No. 04 Civ. 0299, 2004 WL 1386145, at *1 (S.D.N.Y. June 22, 2004) (compelling arbitration of Title VII claims where arbitration agreement required arbitration of "any dispute . . . concerning any . . . aspects of your employment relationship, including, without limitation, discrimination claims").  Generally,

-11-

employment discrimination claims fall within the scope of an arbitration clause as long as the word "discrimination" is mentioned.  Compare id. with Cronas, 2007 WL 2739769, at *10-11 (denying motion to compel because arbitration clause merely required arbitration of any dispute that "arises under the agreement").  Here, the Agreement stated that Rompalli must arbitrate claims under "any other federal . . . statute . . . regarding employment discrimination."  Accordingly, his claims under 42 U.S.C. §§ 1981 and 1985 fall within the scope of the arbitration clause and must be arbitrated.

Certain of Rompalli's statutory claims do not arise under federal anti-discrimination statutes.  In determining whether such a claim "falls within the scope of the parties' arbitration agreement, [the Court must] focus on the factual allegations in the complaint rather than the legal causes of action asserted.  If the allegations underlying the claims 'touch matters' covered by the parties' . . . agreements, then those claims must be arbitrated, whatever the legal labels attached to them."  Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc., 198 F.3d 88, 99 (2d Cir. 1999) (quoting Genesco, 815 F.2d at 846).

In this case, Rompalli's claims under OSHA, RICO, and FLSA all arise out of his employment at Tykhe and therefore fall within the scope of his agreement to arbitrate.  In Part G of his amended complaint, Rompalli claims that Tykhe violated his rights under OSHA because Portnova's use of methanphetamine and possession of pornography on Tykhe computers created "harmful, illegal and dangerous" working

conditions. (Am. Compl. ¶ 38). Similarly, Rompalli's civil RICO claims allege a pattern of illegal activity relating to his termination from Tykhe, including a mail and bank fraud that Tykhe perpetrated by transmitting (or failing to transmit) information about his health insurance and retirement benefits when he ceased to be a Tykhe employee. (Id. ¶¶ 42-47, 54). Rompalli's FLSA claims also obviously arise from his employment at Tykhe. (Id. ¶¶ 34-36). Rompalli therefore must arbitrate these claims.

### 3. Arbitrability of Federal Statutory Claims

Under the third prong of the Genesco test, all of the federal statutory rights asserted by Rompalli in the Amended Complaint are subject to arbitration because Congress did not intend any of them to be nonarbitrable. See, e.g., Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 123 (2001) ("The Court has been quite specific in holding that arbitration agreements can be enforced under the FAA without contravening the policies of congressional enactments giving employees specific protection against discrimination prohibited by federal law [.]"); Shearson/American Exp., Inc., 482 U.S. at 238 ("There is no hint in these legislative debates that Congress intended for RICO treble-damages claims to be excluded from the ambit of the Arbitration Act."); Ciago v. Ameriquest Mortgage Co., 295 F. Supp. 2d 324, 332 (S.D.N.Y. 2003) ("Congress has not evinced an intention to preclude arbitration of FLSA claims."); Steele v. L.F. Rothschild & Co., Inc., 701 F. Supp. 407, 408 (S.D.N.Y. 1988) (compelling arbitration of FLSA

claims); Nunez v. Citibank, N.A., No. 08 Civ. 5398 (BSJ), 2009 WL 256107, at *3-4 (S.D.N.Y. Feb. 3, 2009) (compelling arbitration of Title VII claim).

Rompalli's only other federal statutory claim arises under OSHA. No court has ever opined that Congress intended OSHA claims to be arbitrable. This is scarcely surprising, however, because OSHA does not provide a private right of action. See, e.g., Donovan v. Occupational Safety and Health Review Com'n, 713 F.2d 918, 926-27 (2d Cir. 1983). In the absence of such a right, neither this Court nor an arbitrator can entertain Rompalli's claim under OSHA.

4.   Staying the Balance of Rompalli's Claims

As set forth above, all of Rompalli's claims against Tykhe must be arbitrated. The sole remaining question is whether his claims against the Individual Defendants should be arbitrated, stayed pending arbitration, or litigated in this forum without a stay. In their motion papers, the Individual Defendants do not specifically address this issue. Nevertheless, the arbitration clause in the Agreement does not explicitly extend to the company's employees. There consequently is no basis to compel the Individual Defendants to submit to arbitration of Rompalli's claims.

Whether to grant a stay pending the completion of an arbitration is "a matter largely within the district court's discretion to control its docket." Genesco, Inc., 815 F.2d at 856 (citing Moses H. Cone Memorial Hosp. v. Mercury Const. Corp., 460 U.S. 1, 20 n.23 (1983)). In exercising that discretion, it is "particularly appropriate" to issue a

stay "if the arbitrable claims predominate the lawsuit and the nonarbitrable claims are of questionable merit." Id. at 856. Here, the claims against the Individual Defendants are substantially similar to those against Tykhe. Consequently, it would be a waste of resources for this Court to litigate the claims against the Individual Defendants before the arbitration against Tykhe is concluded. The claims against the Individual Defendants, therefore, should be stayed pending the outcome of the arbitration.

   B.   Injunctive Relief

The Defendants have moved, pursuant to the inherent authority of this Court, to have Rompalli deemed a vexatious litigant, and to have him enjoined from filing any further litigation or administrative actions against Tykhe or the Individual Defendants. (See Defs.' Mem. at 22-23).

As the Second Circuit indicated in Safir v. United States Lines, Inc., 792 F.2d 19, 23-24 (2d Cir. 1986), a district court possesses the authority, in appropriate circumstances, to enjoin a person from filing further vexatious litigation. Indeed, a "district court not only may but should protect its ability to carry out its constitutional functions against the threat of onerous, multiplicitous, and baseless litigation." Id. at 24 (internal citation and quotations omitted); see also In re Martin-Trigona, 737 F.2d 1254, 1262 (2d Cir. 1984). This authority extends to pro se litigants. Yosef v. Passamaquoddy Tribe, 876 F.2d 283, 287 (2d Cir. 1989); McDonald v. Head Criminal Court Supervisor Officer, 850 F.2d 121, 124 (2d Cir. 1988).

In issuing an injunction against a vexatious litigant, "the traditional standards for injunctive relief, i.e., irreparable injury and inadequate remedy at law, do not apply." In re Martin-Trigona, 737 F.2d at 1262. Instead, a "history of litigation entailing vexation, harassment and needless expense to [other parties] and an unnecessary burden on the courts and their supporting personnel is enough." Id. (internal citation and quotations omitted). There are five factors that a district court should consider in determining whether to restrict a litigant's future access to the courts:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

Safir, 792 F.2d at 24. "Ultimately, the question the court must answer is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." Id.

This is the first lawsuit Rompalli has filed in either federal or state court. Rompalli has, however, filed numerous administrative proceedings related to the claims brought in this action. (Defs.' Mem. at 21-22). The great majority of his claims here replicate those that he previously has advanced before administrative agencies, including the Department of Labor, the Department of Justice, and the Equal Employment

-16-

Opportunity Commission. (See Moscow Affirm. Exs. D, E, G-K). None of those earlier claims have been substantiated and Rompalli has not been granted any relief as of the date the Defendants filed this motion. (Id. ¶¶ 6-8). The Defendants also note that they have had to expend substantial resources responding to Rompalli's various administrative complaints as well as this case.

While this action may be duplicative and have little chance of success, it is difficult to determine from Rompalli's papers whether he has any nefarious motivation in pursuing numerous avenues of relief. In any event, because his claims against Tykhe must be submitted to arbitration, he has yet to receive a final disposition of those claims. In addition, he brings this action pro se. This Court also must be mindful that "barring a litigant from the courthouse is a serious matter, 'for access to the Courts is one of the cherished freedoms of our system of government.'" Raffe, 619 F. Supp. at 898 (quoting Kane v. City of New York, 468 F. Supp. 586, 590 (S.D.N.Y. 1979), aff'd, 614 F.2d 1288 (2d Cir. 1979)).

In these circumstances, I conclude, that the Defendants' request for injunctive relief should be denied. Nevertheless, Rompalli should be cautioned against filing any additional actions in this court concerning his employment at Tykhe.[3]

---

[3] Rompalli will, of course, be able to return here to pursue his claims against the Individual Defendants if he prevails at the arbitration.

III.   Conclusion

For the foregoing reasons, I recommend that (a) the Defendants' motion to compel arbitration be granted with respect to all of Rompalli's claims against Tykhe; (b) Rompalli's remaining claims against the Individual Defendants be stayed pending the completion of the arbitration; and (c) the Defendants' request for injunctive relief be denied.

IV.   Notice of Procedure for Filing of Objections to this Report and Recommendation

The parties shall have ten days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.  See also Fed. R. Civ. P. 6(a) and (d).  Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Richard M. Berman and to the chambers of the undersigned at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b).  Any requests for an extension of time for filing objections must be directed to Judge Berman.  The failure to file these timely objections will result in a waiver of those

objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).

Dated:   New York, New York
         May 5, 2010

                                                    _____
                                                    FRANK MAAS
                                                    United States Magistrate Judge

Copies to:

Murty Rompalli
P.O. Box 1856
New York, NY 10156

Ann L. Moscow, Esq.
Peter L. Altieri, Esq.
Epstein, Becker & Green, PC
Fax: (212) 878-8711